UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | |
| v. | ) | No. 11 CR 54-9 |
| | ) | Judge Charles R. Norgle |
| | ) | |
| FRANCIS GALANG | ) | |

### FRANCIS GALANG'S SENTENCING MEMORANDUM

Jacinto "John" Gabriel perpetrated a massive fraud scheme, using his two Health Care companies - Perpetual Home Health ("Perpetual") and Legacy Home Health Care Services - to fraudulently bill Medicare for patient rehabilitative services which were medically unnecessary or never actually performed. Defendant Francis Galang ("Galang"), a Perpetual data entry employee, played a minor role in the scheme, knowingly entering fictitious patient information into the company's software programs, information which was then used by Gabriel and Perpetual to fraudulently bill Medicare for unneeded or nonexistent services. Throughout the scheme, Galang was a salaried employee of perpetual and received none of the actual fraud proceeds. When confronted pre-indictment concerning his role in the scheme, the Galang immediately confessed and provided details of his involvement in the scheme as well as the involvement of others. Once indicted, Galang accepted

1

responsibility and pled guilty, and agreed to cooperate and provide full information to the government and testify truthfully if called upon.

Galang now comes before this Court taking full responsibility for the crime he committed in this case. The mandate provided by Title 18, United States Code, Section 3553(a) requires a court to impose a sentence that is "sufficient, but not greater than necessary" to serve the purposes of sentencing: just punishment, retribution, deterrence and rehabilitation. The District Court is required to give detailed and meaningful consideration to all the relevant factors under Section 3553(a). Taking into consideration all the relevant factors, including the facts and circumstances surrounding Galang's role in the offense, the appropriate advisory guideline range in this case, his cooperation, and his personal and family history and circumstances, a just and fair punishment for Francis Galang would be a sentence of probation, with an order to contribute to the restitution owed to the United States Department of Health and Human Services in this case.

## I. The Offense, Advisory Guideline Range, and Galang's Cooperation

### A. Facts of the Offense

On February 14, 2014, Galang pleaded guilty pursuant to a plea agreement to Count One of the superseding indictment, which charged Galang with conspiring to commit health care fraud, in violation of Title 18, United States Code, Section

1349 (Count One). Galang realizes the seriousness of his criminal conduct, and truly regrets and has remorse for committing the crime for which he has pled guilty.

Galang's plea agreement (which is an exhibit to the Presentence Investigation Report compiled in this case ("PSR")) includes a detailed factual account of his crime, which he admitted to during his guilty plea hearing and again admits to here. In addition, Galang provides and admits to the following summary of facts:

Between 2006 and 2011, Jacinto John Gabriel, using his two Health Care companies, Perpetual and Legacy, orchestrated a multimillion dollar scheme to defraud the United States Department of Health and Human by fraudulently billing Medicare for unneeded or nonexistent rehabilitative services. Galang, as Perpetual data entry employee, played a minor role in the scheme, knowingly entering fictitious patient information into the company's software programs, information which was then used by Gabriel and Perpetual to fraudulently bill Medicare for millions of dollars worth of unneeded or nonexistent rehabilitative services.

Galang was unaware of the fraudulent billing practices when he landed his job as a data entry operator at Perpetual in 2007. His starting salary was $15.00 an hour, and while employed at Perpetual, he worked alongside fellow data entry operators James Davis ("Davis") and Michael Pacis ("Pacis"), both defendants in

3

this case. Galang received his initial training for his position directly from John Gabriel, who showed Galang how to use the Perpetual computer programs to encode a patient's medical condition as well as the course of treatment prescribed onto Medicare OASIS forms. The forms would then be used to bill Medicare.

Early on, Galang believed that the patient medical information he was entering on the OASIS form originated from a nurse or doctor who actually examined the patient. But eventually it became apparent to Galang that the information he was asked to enter unto the Oasis forms was in fact made up of whole cloth, coming directly from Gabriel before the patients were even examined. Galang knew that these fraudulent OASIS forms were ultimately submitted to Medicare for payment, sometimes on the very day the false information was entered on the computer. At one point, Gabriel created and started using one-page checklists, or "cheat sheets", listing code numbers associated with medical conditions that Gabriel wanted to use to increase billing, regardless of the patient's condition. Galang, along with codefendants Pasis and Davis, knowingly used these cheat sheets, and eventually assisted in their creation.

B. <u>**The Advisory Guidelines Calculations**</u>

Pursuant to the plea agreement in this case, Galang and the government are in agreement on all aspects of the advisory guideline calculations 1, and the Presentence Investigation Report ("PSR") concurs with these guideline calculations. Therefore, the agreed final preliminary guideline calculations call for an offense level of 23 and a criminal history category of I, resulting in an advisory guideline range of 46 to 57 months' imprisonment.

C. <u>**Galang's Cooperation and the Anticipated Downward Departure Motion**</u>

When Galang was confronted pre-indictment with his criminal involvement in this case, he immediately admitted to participating in scheme alleged, and subsequently proffered to the government concerning all of his unlawful conduct in this case, as well as explaining the unlawful conduct of his codefendants. Galang subsequently pleaded guilty and greed to fully cooperate with the government in any matter requested, and to provide "complete and truthful testimony in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding." Galang Plea Agreement, attached to PSR. Galang has lived up to the bargain, providing completely truthful information

---

1 In Galang's plea agreement, the government's position was that the fraud loss to reasonably foreseeable to Galang was between $7,000,000 and $20,000,000. resulting in 20 level increase pursuant to guideline 2B1.1(b)(1)(K), and Galang reserved the right to contest this loss amount. While the fraud loss reasonably foreseeable to Galang in this case may well be less than $7,000,000, Galang does not contest the government's position, and therefore the PSR's position, for guidelines purposes.

when asked, and has been ready, willing and able to provide testimony if called, though to date the government has not requested his testimony in any matter.

In exchange for Galang's on-going and complete and truthful cooperation, the government has pledged to inform this Court of the extent of Galang's cooperation, and move the Court, pursuant to Guideline 5K1.1 and 18 USC Section 3553(e), to depart downward from the low end of the advisory guideline range and recommend a sentence of imprisonment of 66% of the advisory guideline range.

## II. Consideration of the Factors Listed in 18 U.S.C. §3553 Supports the Imposition of a Sentence Below the Advisory Guideline Range

The District Court is required to give detailed and meaningful consideration to the relevant sentencing factors under 18 U.S.C. § 3553(a). *United States vs. Gama–Gonzalez*, 469 F.3d 1109, 010-11 (7th Cir. 2006); *United States v. Laaufle*, 433 F.3d 981 (7th Cir. 2006).

### A. Legal Standard for Sentencing Pursuant to 18 U.S. §3553(a)

As the Court is well aware, the Sentencing Guidelines are not mandatory, nor are sentences based on the guidelines presumed to be a reasonable, "thus the range of choice dictated by the facts of the case is significantly broadened." *Gall v. United States*, 128 S.Ct. 586, 602 (2007). In imposing sentence, the Court must "consider all of the 3553(a) factors to determine whether they support the sentence requested by a party, … and must make an individualized assessment based on the

facts presented." *Gall*, at 596-97; *see also United States v. Miranda*, 505 F.3d 785, 791 (7th Cir. 2007) ("Although the guidelines are treated as advisory after *Booker*, the application of section 3553(a) is mandatory"). Section 3553(a)(1) gives the Court " broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant,'" *Gall*, 128 S.Ct at 596 n.6., and this Court now has broader discretion to sentence in the advisory guideline scheme. *See, e.g., United States v. Wachowiak*, 496 F.3d 744, 751 (7th Cir. 2007); *United States v. Ngatia*, 477 F.3d 496, 501-02 (7th Cir. 2007). A court may issue a below-Guideline sentence even in the absence of extraordinary circumstances. *Gall*, 128 S.Ct at 595. In fact, the Court's "freedom to impose a reasonable sentence outside the range is unfettered," *United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2007).

### B. Galang Should Receive the Same Sentence that Similarly Situated Co-Defendants Received

Galang respectfully submits that he should receive a sentence consistent with the sentences received by 2 codefendants in his case, Michael Pacis and James Davis, who are similarly situated. Galang, like Pacis and Davis, was a Perpetual data entry operator who, during the course of the Perpetual fraud scheme, knowingly entered false patient information on OASIS forms, which were then submitted to Medicare for payment. Galang, Pacis and Davis committed the exact

7

same criminal conduct in this case and therefore should receive the same sentence. Pacis and Davis received sentences of probation. Pacis plea agreement, Exhibit 1; Davis plea agreement, Exhibit 2. Galang's should also sentenced to probation.

At sentencing, the court needs to insure that there are no unwarranted disparities in the length of sentences of codefendants in the same case. 18 USC Section 3553(a)(6); *U.S. v. Statham*, 581 F.3d 548, 66-67 (7th Cir. 2009). In making that determination, the sentencing court may reasonably compare the similarities between conduct and circumstances of one defendant to that of another to ensure that no sentencing disparities occur within the same case for similarly situated defendants. *U.S. v. Carter*, 538 F.3d 784, 802 (7th Cir. 2008); *U.S. v. Panice*, 598 F.3d 426, 463-67 (7th Cir. 2010).

The conduct and circumstances of Galang, Pacis and Davis in this case are strikingly similar: Each was a Perpetual data entry operator who, during the course of the scheme, knowingly entered false patient information on OASIS forms ultimately submitted to Medicare; Each was unaware of the fraud scheme when they were first hired as data entry employees at Perpetual; Each was a salaried employee of Perpetual who received none of the fraud proceeds; Each has pleaded guilty, provided detailed information regarding their involvement in the scheme, and has agreed to cooperate with the government. Clearly, Galang's criminal conduct in this case is the same as Pacis and Davis and he should be sentenced in a

similar fashion. Both Pacis and Davis received sentences of probation. Galang's should be sentenced to probation as well. Th

### C. Galang's Personal & Family History & Circumstances Warrant a Variance from the Advisory Guideline Range under §3553(a)(1)

In order for a sentence to be reasonable, it must be based on factors "unique or personal to a particular defendant," not those that "reflect ... attributes common to all defendants." *United States v. Wallace*, 458 F.3d 606, 612 (7th Cir. 2006) (*citing United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006)). Galang has many "unique or personal" characteristics that differentiate him from other defendants and should be considered in this case:

Francis Galang is 30 years old and lives in Crestwood Hills, Illinois with his wife of three years, Charmaine, and his one year old son Chase. Galang lives in the house of his father, Manuel, for which he pays $600 in rent. Also living in the house are Galang's stepmother, his 22 year old sister Charisse, and his stepsisters. Galang's mother lives in the Philippines. Galang speaks to her over the phone every day.

Since leaving Perpetual, Galang has worked as a physical therapy coordinator for Midwest Healthcare in Villa Park, Illinois, where he schedules and manages medical therapy sessions for patients. His wife Charmaine also works in the medical field is a patient care technician.

9

Galang was born in February 1985 in Cebu City in the Philippines to Manuel and Nanette Galang. When Galang was 8 years old, Galang's father deserted the family and moved to the United States with another woman. After his departure, Galang's father provided the family with no financial support, and Galang's mother was forced to move her family into her parent's home in Canlaon City. They didn't have much money during the period that Galang and his mother lived with her parents, so it was financially difficult for them. Though the times were financially rough, Galang experienced love and support from his mother and his grandparents.

Galang attended school in the Philippines, ultimately graduating from Notre Dame High School in Cotabato City and subsequently studying for two years at the University of the Immaculate Conception in Davao City. To date, he has not completed his college education.

Unexpectedly, in approximate 2006, Galang received a phone call from his stepmother Leonie Galang, who he had never met, offering to sponsor his relocation to the United States. Up to that time, Galang had had no contact with his father, or in fact anyone in the United States. After discussing the offer with his mother, and considering the possibility of continuing his education and the promise of a better and more prosperous life, Galang, then 21 years old with no employment waiting for him, accepted the offer and moved alone to the United States. It was a difficult transition. Galang moved in with his father - who had deserted him and who he

had no relationship with – in a house he shared with his wife and daughters in Romeoville, Illinois. In the years since, Galang's relationship with his father has remained strained and distant, but he has forged a healthy and trusting relationship with his stepmother Leonie. Galang's sister Charisse also moved to the United States from the Philippines and, as noted, now resides in her father's home in Crestwood Hills.

In 2006, shortly after his arrival in United States, Galang landed his first job ever – working as an office clerk for Quality Home Health Care in Oak Forest, Illinois. The job paid $10.00 an hour. Galang worked for Quality until 2007, when he started his position at Perpetual.

Taking part in Perpetual fraud scheme is certainly the greatest mistake in Galang's young life. He is ashamed of his conduct, and realizes now how he hurt the individual patients of Perpetual, who often ended up receiving unnecessary or incorrect treatment because his bogus coding of their physical conditions and resulting treatments was not based on their real medical conditions. It pains Galang that he didn't have the wisdom to realize the wrong he was doing at the time he was doing it. When he learned of the fraud, he should have reported it, or at least quit his job at Perpetual. But he was afraid, afraid of losing his job, afraid of losing his source of income to support his family. The stain of his participation in the fraud will stay with him forever. But he is confident that his criminal conduct

in this case is an aberration that will never happen again. He has been taught a hard lesson, one that he will never forget. Going forward, he pledges to be an honest and productive citizen and responsible father and husband.

### D. Other Mitigating Section 3553(a) Factors in Galang's Case

Sentencing Galang's to a period of probation rather than incarceration in this case would be sufficient but not greater than necessary to provide: (1) just and fair punishment, Section 3553(a)(2)(A); (2) possible restitution to the victim of the offense, Section 3553(a)(7) ; and (4) an acceptable alternative sentence to imprisonment. 18 U.S.C. § 3553(a)(3).

1. Galang's Exceptionally Low Risk of Recidivism

Francis Galang is 30 years old, a first offender - in fact he has never even been arrested. He is employed, has exhibited no violent tendencies, and has a stable home life he shares with his wife in one year old son. Quite simply, Galang has committed no crimes other than those charged in the indictment in this case, poses no threat to the well being of anyone, and his familial responsibilities that he has steadfastly embraced make it very unlikely that he will commit any crimes in future. A sentence of probation instead of incarceration therefore is fair and just in this case.

2. The Need to Provide Restitution to Victims under Section 3553(a)(7)

In determining the appropriate sentence, this Court must consider "the need to provide restitution to any victims of the offense." See, 18 U.S.C. Section 3553(a)(7); see also, *e.g., United States v. Menyweather,* 447 F.3d 625, 634 (9th Cir. 2006) (acknowledging district court's discretion to depart from guidelines to impose a probationary sentence, since the "goal of obtaining restitution for the victims of Defendant's offense . . . is better served by a nonincarcerated and employed defendant"); *United States v. Peterson*, 363 F. Supp. 2d 1060, 1061-62 (E.D. Wis 2005) (granting a variance so that defendant could work and pay restitution).

Galang, like all of his codefendants, is responsible for restitution to the United States Department of Health and Human Services. If Galang receives a sentence from this Court similar to the sentences of codefendants Davis and Pacis, he will be ordered to pay $1,000,000 in restitution. Galang accepts the responsibility for the payment of restitution, but can only make restitution payments if he is not sent to prison and continues his present employment. This Court should seek to maximize, rather than eliminate, Galang's ability to make restitution payments in this case.

3. <u>Probation is an Approprite Sentence under § 3553(a)</u>

This Court must now consider all of "the kinds of sentences available" by statute, Section 3553(a)(3), even if the "kinds of sentence . . . established [by] the guidelines" zones recommend only a prison term. See, Gall, 128 S.Ct. At 602 & n.11.

Further, Congress has directed the Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence . . . ' 28 U.S.C. Section 994(j). Congress issued this directive in the belief that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society . . . " See, Pub. L. No. 98-473, Section 239, 98 Stat.1987, 2039 (1984) (set forth at 18 U.S.C. Section 3551 note). A sentence of probation for Galang, who is a nonviolent, first-time offender, would satisfy the mandate that the Court impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in Section 3553(a).

### III.   Conclusion

Francis Galang respectfully requests that this Court consider the foregoing discussion of facts and law and sentence him to a period of Probation.

                                    Respectfully submitted,

                                    /s/   William D. Shaver

                                    Attorney for Francis Galang

William D. Shaver
150 North Michigan Avenue, Suite 2800
Chicago, Illinois 60601
(312) 854- 7054